MICHAEL B. BROWN, Bar No. 179222
michael.brown@stoel.com
THOMAS A. WOODS, Bar No. 210050
thomas.woods@stoel.com
BENJAMIN J. CODOG, Bar No. 307034
ben.codog@stoel.com
MICHELLE J. ROSALES, Bar No. 343519
michelle.rosales@stoel.com
STOEL RIVES LLP
500 Capitol Mall, Suite 1600
Sacramento, CA  95814
Telephone:  916.447.0700
Facsimile:  916.447.4781

*Attorneys for Plaintiff*
*METROPOLITAN LIFE INSURANCE COMPANY*

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA - FRESNO DIVISION

| | |
|---|---|
| METROPOLITAN LIFE INSURANCE COMPANY, a New York corporation,<br><br>Plaintiff,<br><br>v.<br><br>MARICOPA ORCHARDS, LLC, a California limited liability company; FARID ASSEMI, an individual; FARSHID ASSEMI, an individual; DARIUS ASSEMI, an individual; and DOES 1-100,<br><br>Defendants. | Case No.<br><br>**COMPLAINT FOR BREACH OF LOAN AGREEMENT; BREACH OF GUARANTY; JUDICIAL FORECLOSURE; SPECIFIC PERFORMANCE AND APPOINTMENT OF RECEIVER; INJUNCTIVE RELIEF; AND REPLEVIN**<br><br>**DEMAND FOR JURY TRIAL** |

COMPLAINT FOR BREACH OF LOAN AGREEMENT

-1-

# COMPLAINT

Plaintiff METROPOLITAN LIFE INSURANCE COMPANY, a New York corporation ("Plaintiff" or "MetLife") hereby brings this Complaint against MARICOPA ORCHARDS, LLC, a California limited liability company; FARID ASSEMI, an individual; FARSHID ASSEMI, an individual; DARIUS ASSEMI, an individual; and DOES 1 through 100 (each a "Defendant" and collectively, "Defendants"):

# PARTIES

1. Plaintiff is, and at all times mentioned herein was, a New York corporation, qualified to do business in the State of California.

2. Defendant MARICOPA ORCHARDS, LLC ("Maricopa" or "Borrower") is a California limited liability company, and owner of the real property collateral located in Kern County, California.

3. Defendant FARID ASSEMI is, on information and belief, a resident of Fresno County, California.

4. Defendant FARSHID ASSEMI is, on information and belief, a resident of Fresno County, California.

5. Defendant DARIUS ASSEMI is, on information and belief, a resident of Fresno County, California.

6. FARID ASSEMI, FARSHID ASSEMI, and DARIUS ASSEMI are collectively referred to herein as the "Guarantor Defendants."

7. Plaintiff is ignorant of the true names and capacities of Defendants designated herein as DOES 1 through 100, inclusive, and therefore sues such Defendants by such fictitious names. Plaintiff will amend this Complaint to allege the true names and capacities of such Defendants when the same have been ascertained. Plaintiff is informed and believes, and thereupon alleges, that each of the fictitiously named Defendants is responsible in some manner for the occurrences herein alleged, and that Plaintiff's damages as herein alleged were proximately caused by such conduct or Plaintiff's right, title, and interest in the real and personal property collateral described herein is superior to any such Defendant's right, title, or interest in said property.

**JURISDICTION AND VENUE**

8. The Court has jurisdiction over all the causes of action alleged in this Complaint pursuant to 28 U.S.C. § 1332 because complete diversity between Plaintiff and the named Defendants exists, and because the amount in controversy exceeds $75,000. This Court has supplemental subject matter jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367, and under the principals of pendent jurisdiction.

9. Venue is proper in this District because one or more Defendants reside in this District, and all Defendants are residents of the State of California. 28 U.S.C. § 1391(b)(l). Venue is also proper in this District because a substantial part of the events or omissions giving rise to the claim occurred in this District, and because the subject of the action is situated in this District. *Id*. § 1391(b)(2).

10. Under Civil Local Rule 120, this case shall be assigned to the Fresno Division because MetLife's claims arose in Kern County.

**FACTUAL BACKGROUND**

**A.     The Loan and Loan Documents, and the Collateral Provided by Borrower to Lender**

11. On or about September 28, 2015, MetLife, as lender ("Lender"), made a loan to Maricopa, as borrower, in the original principal amount of One Million Eight Hundred Fifty Thousand and 00/100 Dollars ($1,850,000.00) ("Loan"), pursuant to that certain Loan Agreement dated as of September 28, 2015 ("Loan Agreement"), by and among Maricopa, MetLife, and the Guarantor Defendants. A true and correct copy of the Loan Agreement is attached hereto as **Exhibit 1**.

12. The Loan is evidenced by that certain Promissory Note (the "Note") payable to the order of MetLife, in the original principal sum of One Million Eight Hundred Fifty Thousand and 00/100 Dollars ($1,850,000.00), initially bearing interest at the rate of 4.80 percent per annum, with a Maturity Date of January 5, 2034. A true and correct copy of the Note is attached hereto as **Exhibit 2**.

13. The Note is secured by, *inter alia*, (i) that certain Deed of Trust, Security Agreement, Assignment of Rents and Leases and Fixture Filing dated September 28, 2015, and recorded on

COMPLAINT FOR BREACH OF LOAN AGREEMENT     -3-

September 29, 2015, in the Kern County Official Records as Document No. 000215135115 ("Deed of Trust"), in favor of MetLife, as beneficiary, under which Borrower, Blueridge Farms, LLC, a California limited liability company, McConnell Farms, LLC, a California limited liability company, Overtime Orchards, LLC, a California limited liability company, Green Valley Blues, LLC, a California limited liability company, and Brent Lake and Jennifer Lake, as Trustees of The Lake Family Trust dated February 26, 2015, as trustors, conveyed to Leon A. Moreno, as trustee, real property situated in the County of Kern, State of California, and described on Exhibit "A" to the Deed of Trust, and all appurtenances, fixtures, permanent plantings, rights and benefits thereto, as described in the Deed of Trust (the "Real Property"), which Deed of Trust was amended by that certain Consent to Transfer by and between Borrower and MetLife, dated October 28, 2022, and recorded on May 25, 2023, in the Kern County Official Records as Document No. 223061422 ("Consent"), pursuant to which MetLife consented to the transfer of the ownership interest of the non-borrower trustors in and to the Real Property, and (ii) that certain Collateral Assignment of Water Supply Agreement and Easement dated as of September 28, 2015, and recorded on September 12, 2024, in the Kern County Official Records as Document No. 224110538 ("Collateral Assignment"), assigning to Lender as security for the Loan all rights and interests of Borrower under the Water Supply Agreement and Easement dated as of September 28, 2015 benefitting and appurtenant to the Real Property (the "Water Agreement"). A true and correct copy of the Deed of Trust, Consent, Water Agreement[1], and Collateral Assignment are attached hereto as **Exhibit 3**, **Exhibit 4**, **Exhibit 5**, and **Exhibit 6**, respectively.

14. The Deed of Trust and Loan Agreement further provides that the Loan is secured by "Water Rights" as that term is defined in the Deed of Trust including, without limitation, those rights of Maricopa under the Water Agreement that was assigned to MetLife under the Collateral Assignment, and all other agreements, service contracts and other entitlements to water. (Loan Agreement, § 2.4; Deed of Trust, Granting Clause E.)

15. In connection with the Loan, Maricopa and Guarantor Defendants entered into that certain Environmental Indemnity Agreement dated as of September 28, 2015 ("Environmental

---

[1] The Water Agreement was recorded in each County as shown in the attached Exhibit 5.

COMPLAINT FOR BREACH OF LOAN AGREEMENT -4-

125586555.5 0053564-00652

Indemnity"), pursuant to which Maricopa and Guarantor Defendants have agreed to indemnify MetLife from environmental claims and violations of environmental laws, more specifically described therein. A true and correct copy of the Environmental Indemnity is attached hereto as **Exhibit 7**.

16. In connection with the Loan, each of the Guarantor Defendants entered into a Loan Guaranty Agreement dated as of September 28, 2015 (each a "Guaranty"), pursuant to which Guarantor Defendants personally, jointly and severally, guaranteed the Loan. A true and correct copy of each Guaranty is attached hereto as **Exhibit 8**.

17. The Real Property is irrigated agricultural land consisting of approximately 159.69 acres of irrigated agricultural products including but not limited to blueberry crops and includes the rights and benefits under the Water Agreement and related fixtures, equipment, and other appurtenances, permanent plantings and water rights.

18. The Deed of Trust secures the Loan in favor of MetLife encumbering the Real Property and further includes as additional collateral an absolute assignment of Maricopa's right, title, and interest in in all present and future income, issues, profits, and revenues of the Real Property, Crops from the Real Property, leases relating to and arising from the Real Property, and Proceeds from the Real Property (as those terms are defined therein), and all benefits to be derived therefrom. (Deed of Trust, Recital C, § 10.5(a).)

19. The Deed of Trust constitutes a security agreement ("Security Agreement") with respect to the Proceeds, Crops, Water Rights, Improvements, Intangibles, Proceeds, Minerals, and any other personal property included in the description of the Real Property (as all those terms are defined therein) and Maricopa granted to Plaintiff a security interest therein. The Security Agreement provides that:

> **10.1 Security Agreement.** This instrument shall constitute a security agreement with respect to the Proceeds, Crops, Water Rights, Improvements, Intangibles, Proceeds and Minerals and any other personal property included in the description of the Property, and Trustor hereby grants to Beneficiary a security interest therein.
>
> **10.2 Security Interest.** Trustor authorizes Beneficiary to file in any relevant jurisdiction any initial financing statements (including

STOEL RIVES LLP
ATTORNEYS AT LAW
SACRAMENTO

COMPLAINT FOR BREACH OF
LOAN AGREEMENT                -5-

125586555.5 0053564-00652

> fixture filings) and amendments thereto necessary to perfect and continue Beneficiary's security interest in the Property. Upon request by Beneficiary, Trustor shall take whatever other action is reasonably requested by Beneficiary to perfect and continue Beneficiary's security interest in the Property. Trustor hereby appoints Beneficiary as Trustor's attorney-in-fact for the purpose of executing or filing any documents necessary to perfect or continue the security interest granted therein. Trustor will reimburse Beneficiary for all expenses incurred in perfecting or continuing this security interest.

20. Under the Deed of Trust, "Water Rights" are defined to include, *inter alia*, all rights under the Water Agreement.

21. The Security Agreement under the Deed of Trust was further perfected by MetLife's filing of UCC-1 Financing Statements with the California Secretary of State on September 29, 2015, at Filing No. 157487596830 (the "UCC Filing"). The UCC Filing was "continued" through the official filing of a UCC Financing Statement Amendment on April 6, 2020, at Filing No. 2077716344. The Security Agreement as perfected by the UCC Filing grants to and perfects in Lender all of Maricopa's right, title, and interest in personal property including but not limited to: all equipment, goods, and accounts whether attached or appurtenant to the Real Property; all crops (including without limitation harvested crops, farm products, seed and the products and proceeds thereof) along with all present and future income, rents, issues, profits, and revenues of the crops now or hereafter growing on the Real Property; all rights to the use and enjoyment of water, whether or not appurtenant to the Real Property, and all improvements for water delivery and storage; and easements and permits associated with the same. The UCC Filing is attached hereto as **Exhibit 9**.

22. MetLife has provided all notices to enforce its right, title, and interest in all collateral under the Security Agreement and has a priority security interest therein.

23. Pursuant to the Collateral Assignment, Maricopa assigned to MetLife its "rights, title and interest under this [Water] Agreement" and "in the event of a default under such Loan, MetLife (and its successors) would have the right to succeed to [Maricopa's] rights under this [Water] Agreement and the Property secured by such Loan would continue to receive water hereunder the terms further specified in this [Water] Agreement." (Collateral Assignment, § 1.)

24. The Loan, Deed of Trust, Guaranty, Indemnity, Water Agreement, Collateral Assignment, and any other agreements evidencing the Loan are collectively referred to herein as the "Loan Documents."

## B. Default on the Loan and Related Lawsuits Involving Unpaid Loans by the Guarantor Defendants and Their Affiliated Farming Operations

25. On September 4, 2024, MetLife provided to Maricopa and the Guarantor Defendants a Notice of Default and Demand for Payment for the approximate total due of $70,776. Maricopa and Guarantor Defendants were further informed that if payment was not received by September 10, 2024, MetLife would initiate a demand and acceleration of the Loan. A true and correct copy of this notice is attached hereto as **Exhibit 10**.

26. The past-due amount was not paid by September 10, 2024, and on September 18, 2024, MetLife sent to Maricopa and Guarantor Defendants a Notice of Default and Acceleration of Debt for the approximate total due of $1,430,114. A true and correct copy of this notice of acceleration of debt is attached hereto as **Exhibit 11**.

27. The Guarantor Defendants, through other companies they own, have substantial farm holdings including thousands of acres of pistachio and almond orchards that they have been farming for decades. The Guarantor Defendants and their farming entities have experienced extreme financial difficulties and the inability to repay their loans from MetLife and its affiliated companies in an amount of over $48,600,000 from a total of nine defaulted loan agreements that has resulted in the filing of this action and other judicial foreclosure proceedings in this Court.

28. The Guarantor Defendants and their affiliated companies' financial distress and defaults to their lenders is also not limited to MetLife alone. The following cases filed in the Court involve the Guarantor Defendants and include claims alleging over $770 million in defaulted loan obligations and are possibly related to the instant action pursuant to Local Rule 123:

- *The Prudential Insurance Company of America, et al. v. ACDF, LLC, et al.*, Case No. 1:24-cv-01102-KES-SAB, filed September 16, 2024[2]; and

---

[2] On September 23, 2024, the Honorable Kirk E. Sherriff in the *Prudential* matter found that the two cases were related. Dkt. 37.

- *U.S. Bank National Association v. Touchstone Pistachio Company, LLC, et al.*, Case No. 1:24-cv-01105-JLT-SKO, filed September 17, 2024.

## FIRST CAUSE OF ACTION

**(Breach of Loan Agreement – Against Maricopa)**

29. Plaintiff incorporates and re-alleges paragraphs 1 through 28 above as if fully set forth herein.

30. The Loan Agreement constitutes a binding agreement between Plaintiff and Maricopa.

31. Plaintiff has fully performed the Loan Agreement and to the extent Plaintiff has failed to comply with any material provision therein, it was excused from doing so by Maricopa's breach of the Loan Agreement by, among other things, failing to make payments when due under that agreement.

32. Maricopa breached the Loan Agreement by, among other things, failing to make payments when due under that agreement.

33. Maricopa's breaches and default under the Loan Agreement have caused Plaintiff to incur damages in excess of $1,430,114.

34. Plaintiff is entitled to judgment against Maricopa for amounts owed through the date of judgment, including (i) unpaid principal; (ii) unpaid accrued interest; (iii) late charges; (iv) fees, costs, and other charges (including legal fees and costs) to which Plaintiff is entitled under the governing documents through the date of judgment; and (v) pre-judgment and post-judgment interest at the rate provided by law.

## SECOND CAUSE OF ACTION

**(Breach of Guaranty – Against Guarantor Defendants)**

35. Plaintiff incorporates and re-alleges paragraphs 1 through 34 above as if fully set forth herein.

36. Each Guaranty constitutes a binding agreement between Plaintiff and the Guarantor Defendants.

37. Plaintiff has fully performed under each Guaranty and to the extent Plaintiff has failed to comply with any material provision therein, it was excused from doing so by Guarantor Defendants.

38. As a condition to granting the Loan under the Loan Agreement, Plaintiff required the Guarantor Defendants to personally guarantee the Loan.

39. Pursuant to their respective Guaranty agreements, the Guarantor Defendants unconditionally and irrevocably guaranty and promise to pay the Loan pursuant to the terms of the Loan Documents.

40. Plaintiff was harmed by the Guarantor Defendants' failure to make payments when due and despite service upon them of notices of default.

41. Guarantor Defendants' breaches and defaults under the Guaranty agreements have caused Plaintiff to incur damages in excess of $1,430,114.

42. Plaintiff is entitled to judgment against the Guarantor Defendants, jointly and severally, for amounts owed under each Guaranty through the date of judgment, plus interest thereon, and Plaintiff's expenses, attorneys' fees, and collection costs.

### THIRD CAUSE OF ACTION

**(Judicial Foreclosure Under Security Agreement – Against Maricopa)**

43. Plaintiff incorporates and re-alleges paragraphs 1 through 42 above as if fully set forth herein.

44. The Security Agreement in the Deed of Trust constitutes a binding agreement between Plaintiff and Maricopa.

45. Under the Security Agreement, Maricopa granted Plaintiff a security interest with respect to the collateral defined therein including Proceeds, Crops, Water Rights, Improvements, Intangibles, Proceeds and Minerals, and any other personal property included in the description of the Property.

46. Where there is an "Event of Default" under the Loan Agreement, the Deed of Trust gives Plaintiff rights and remedies of a secured party under the Uniform Commercial Code with respect to any part of the Property, as that term is defined therein, that constitutes personalty.

Plaintiff shall have the rights and remedies of a secured party under the Uniform Commercial Code and Plaintiff shall have the option of proceeding as to the Real Property and all or some of the personal property separately or together, in accordance with the unified sale procedures set forth in the Uniform Commercial Code as adopted in California. (Deed of Trust, § 13.1(e).)

47. Due to Maricopa's default under the Loan, Deed of Trust, and Loan Agreement, Plaintiff is entitled to foreclosure of its lien under the Security Agreement and the possession and sale of the collateral secured thereunder.

**FOURTH CAUSE OF ACTION**

**(Judicial Foreclosure Under Deed of Trust – Against Maricopa)**

48. Plaintiff incorporates and re-alleges paragraphs 1 through 47 above as if fully set forth herein.

49. To secure payment of its obligations under the Note and Loan Agreement, Maricopa made, executed, and delivered to Plaintiff, as beneficiary, the Deed of Trust. (*See* Deed of Trust at 1-3.)

50. Under the Deed of Trust, where there has been an "Event of Default" under Deed of Trust and other Loan Documents, Plaintiff may declare at its option that "the entire Indebtedness" (which is defined in the Deed of Trust as the outstanding principal amount of the Note, together with accrued interest thereon and all other amounts payable under the Note, Deed of Trust and the Loan Agreement, any amounts advance by Lender to preserve the Real Property or to discharge the obligations of Borrowers under the Loan Documents and any expenses of Lender in connection therewith) is "immediately due and payable." (Deed of Trust, § 13.1(a).) The Lender accelerated the Indebtedness under the terms of the aforementioned notice of acceleration of debt.

51. In the event of any Event of Default under the Loan Documents, Plaintiff may exercise any one of the rights and remedies in the Deed of Trust including a judicial foreclosure in accordance with and to the extent allowed by applicable law. (Deed of Trust, § 13.1.)

52. As a result of Defendants' default, Plaintiff is entitled to enforce its security interest by judicial foreclosure of all of Maricopa's rights in the Real Property and personal property and other collateral through a public sale thereof by the proper judicial officer.

## FIFTH CAUSE OF ACTION

### (Specific Performance and Appointment of Receiver – Against Maricopa)

53. Plaintiff incorporates and re-alleges paragraphs 1 through 52 above as if fully set forth herein.

54. The Loan Agreement provides that Defendants shall consent to the appointment of a receiver. (Loan Agreement, § 11.1(h).) The Deed of Trust further provides that Plaintiff is entitled to have a receiver appointed to operate the Property pending foreclosure and preserve and protect the Collateral, to collect the Proceeds, and to enforce the assignment of leases and rents provision. Section 13.1(g) of the Deed of Trust provides:

> Beneficiary shall have the right to have a receiver appointed to take possession of any or all of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, to collect the Proceeds from the Property and apply the Proceeds, over and above cost of the receivership, against the Indebtedness. Beneficiary may apply to any court of competent jurisdiction for the appointment of a receiver or receivers for the Property and of all the earnings, revenues, rents, issues, profits and income therefrom, ex parte, without notice, and without regard to the sufficiency or value of any security for the obligations secured hereby or the solvency of any party bound for its payment, the expenses of which shall be secured by this Deed of Trust. The receiver may serve without bond if permitted by law. Beneficiary's right to the appointment of a receiver shall exist whether or not apparent value of the Property exceeds the Indebtedness by a substantial amount. Employment by Beneficiary shall not disqualify a person from serving as a receiver.

55. Plaintiff has performed all of its obligations to Maricopa under the terms of the Loan Documents.

56. Plaintiff has demanded that Defendants allow Plaintiff the ability to take possession of the Real Property to collect the rents, issues, and profits and to maintain, lease, and operate the Real Property as provided in the Deed of Trust.

57. There is no adequate remedy at law to enforce the assignment of leases and rents provision in the Deed of Trust.

58. Plaintiff is entitled to specific performance of the assignment of leases and rents provision in the Deed of Trust including, without limitation, for the appointment of a receiver to collect the rents, issues and profits and to preserve the protect the collateral and Real Property.

59. The Loan Documents provide for payment to Plaintiff of all costs of collection including reasonable attorneys' fees and costs of suit. Plaintiff is, therefore, entitled to its costs, expenses, and attorneys' fees incurred in this matter.

## SIXTH CAUSE OF ACTION

### (Injunctive Relief – Against Defendants)

60. Plaintiff incorporates and re-alleges paragraphs 1 through 59 above as if fully set forth herein.

61. To enable the receiver to properly and effectively carry out his or her specific and general duties and powers, and to prevent Plaintiff from suffering irreparable injury, Plaintiff seeks a preliminary injunction and permanent injunction enjoining Defendants and their agents, partners, property managers, employees, officers, directors, affiliates, assigned successors, representatives, and all persons acting under, in concert with, or for them from performing the actions specified in the prayer of this Complaint.

## SEVENTH CAUSE OF ACTION

### (Replevin – Against Defendants)

62. Plaintiff incorporates and re-alleges paragraphs 1 through 61 above as if fully set forth herein.

63. The Loan Documents establish Plaintiff's entitlement to all rights and interests in Proceeds, including but not limited to all income, profits, rents, issues, profits, and revenues of the Real Property and crops (as defined therein). For example, the Deed of Trust, Granting Clause C, and Section 13.1 permit Plaintiff's right to take, sell, foreclose, and collect on the Proceeds including but not limited to those associated with the Crops. Where there is an "Event of Default" under the Loan Documents, the Deed of Trust gives Plaintiff expansive rights over the collateral, including but not limited to the right to take possession of, manage, protect, and sell the collateral. (Deed of Trust, § 13.1.) Maricopa is required to deliver the collateral to Plaintiff upon request. (*Id.*)

64. An Event of Default has occurred and has been noticed. (*See* Exhibits 10-11.) As a result, Plaintiff is entitled to the Proceeds and collateral described in the Loan Documents.

65. Defendant continues to possess the Proceeds and collateral described in the Loan Documents despite its non-entitlement to the same.

66. Plaintiff is entitled to a writ of attachment and/or writ of possession permitting it to collect the Proceeds, including but not limited to crops and income, profits, revenues, and accounts related thereto.

**PRAYER FOR RELIEF**

WHEREFORE Plaintiff requests the following relief against Defendants:

1. That the Court enter a money judgment against Defendants, and each of them, for:

    a. all amounts owed to date and continuing to accrue and be incurred under the Loan Agreement, and each Guaranty (including but not limited to all principal outstanding, interest, late charges, attorneys' fees, financial advisor fees, expenses, and advances), in an amount exceeding $1,430,114;

    b. costs of this action, including reasonable attorneys' fees;

    c. all sums that Plaintiff has expended and hereafter expends to protect its interests under the Loan Agreement, Deed of Trust, Guaranty, Environmental Indemnity, Water Agreement, Collateral Assignment and any other Loan Document; and

    d. pre-judgment and post-judgment interest.

2. That the Court enter judgment declaring that the rights, claims, ownership, liens, titles, and demands of Defendants are subject, subsequent, and subordinate to the Deed of Trust, Water Agreement, and Collateral Assignment.

3. That the Court enter its order appointing a receiver, and that, pursuant to the order, the receiver be authorized to: take possession and control of the Real Property and all personal property and collateral secured under the Deed of Trust, including Crops, Equipment, Fixtures, Water Rights and Proceeds ("Collateral"); conserve, maintain, and manage the Real Property and Collateral, including entering into any appropriate lease(s) associated with the management of the Real Property and Collateral; and/or retain a third party to manage the Real Property and the

Collateral; collect any and all rents; sell the Property and the Collateral following adequate notice to the Defendants; and perform all other acts consistent with the terms of the order entered by the Court.

4. That the Court enter an order for specific performance of the provisions of the Deed of Trust, and the assignment referred to therein, relating to the right of Plaintiff, pending a foreclosure and/or trial on the issues herein, to take possession of and to care for and operate the Real Property and Collateral, and to collect the rents, income, issues, profits, and security deposits therefrom during the pendency of this action.

5. That the Court enter its order directing Defendants and anyone in possession of the Real Property and/or the Collateral to deliver possession of same to the receiver or to Plaintiff and to perform other acts and to refrain from such conduct as deemed appropriate by the Court.

6. That the Court enter a preliminary injunction and permanent injunction enjoining Defendants and their agents, partners, property managers, employees, officers, directors, affiliates, assignees, successors, and representatives and all persons acting under, in concert with, or for them from:

    a. Committing or permitting any waste on the Real Property and Collateral, or suffering or committing or permitting any act on the Real Property or any part thereof in violation of law, or removing or otherwise disposing of any of the Collateral, or the fixtures presently on the Real Property or any part thereof;

    b. Directly or indirectly interfering in any manner with the discharge of the receiver's duties or the receiver's possession of and operation or management of the Real Property or the Collateral; and

    c. Doing any act which will, or which will tend to, impair, defeat, divert, prevent, or prejudice the preservation of the Real Property and the Collateral.

7. That to the extent the receiver has not previously sold the Collateral securing the Loan in accordance with the order appointing the receiver, the Court order, adjudge, and decree that the liens granted pursuant to the Deed of Trust be foreclosed; that all Collateral under the Deed of Trust be sold according to law by the levying officer; that the proceeds of the sale be applied in

payment of the amounts due on the Loan; and that Defendants and all persons claiming under them after execution of the Deed of Trust, as lien claimants, judgment creditors, claimants under a junior deed of trust, purchasers, encumbrances, or otherwise, be barred and foreclosed from all rights, claims, interests, or equity of redemption in the Real Property and any other Collateral under those instruments when the time for redemption has elapsed.

8. That the Court award Plaintiff judgment and execution against Defendants for any deficiency that may remain after applying all net proceeds of the sale of the Real Property and the Collateral (whether sold by the receiver or through foreclosure) duly applicable to satisfy the amounts found due by the Court under this demand for judgment.

9. That the Court order, adjudge, and decree that Plaintiff or any parties to this action may purchase the Real Property and the Collateral at any foreclosure sale; that when the time for redemption has elapsed, the levying officer or receiver execute a deed to the purchaser of the Real Property and the Collateral; and that the purchaser be given possession of the Real Property and the Collateral on production of the levying officer's or receiver's deed.

10. That the Court order a writ of attachment or possession (claim and delivery) to enforce Plaintiff's right, title, or interest in any collateral of Defendants.

11. For such other and further relief as the Court deems just and equitable.

//
//
//
//

# JURY DEMAND

Under Fed. R. Civ. Proc. 38 and Local Rule 201, Plaintiff demands a trial by jury of all issues raised by this Complaint that are triable by jury, as is its right under the Seventh Amendment to the Constitution of the United States and as given by statute.

DATED: October 10, 2024

STOEL RIVES LLP

MICHAEL B. BROWN, Bar No. 179222
michael.brown@stoel.com
THOMAS A. WOODS, Bar No. 210050
thomas.woods@stoel.com
BENJAMIN J. CODOG, Bar No. 307034
ben.codog@stoel.com
MICHELLE J. ROSALES, Bar No. 343519
michelle.rosales@stoel.com

*Attorneys for Plaintiff*
METROPOLITAN LIFE INSURANCE COMPANY